The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you. Our first case for argument today is 2018-2021, Peerless Industries v. Crimson. Mr. Reindach, you may proceed. Thank you, Your Honor. And may it please the court. After a two-week trial, a jury returned a unanimous verdict in favor of my client, finding that Crimson AV had proven by clear and convincing evidence that the 850 patent was obvious in view of the combination of the Techcraft TRK-50B and the Sanus DMTL-2. We are here today because despite overwhelming proof of invalidity, the district court granted the extreme remedy of J-MAL on the obviousness verdict. The district court accomplished this by impermissibly failing to consider evidence that supported the jury's verdict. The district court also incorrectly determined that there was no evidence of a motivation combined. The district court was mistaken. First, the trial evidence proved that the sole feature of the 850 that was patentable over the prior art was the bridge plate. In this regard, Marshall Brown, who was the prosecuting attorney, was forced to admit at trial that but for the addition of the bridge plate, the 850 patent was anticipated by the prior art references of Bremen and Pfister. Mr. Reindach, this is Judge Toronto. Can you just explain what the motivation is that was in evidence to combine the T prior art with the V prior art? Certainly. There was, in fact, substantial evidence of a motivation to combine because there was testimony of three facetas, Lamb, Plavnik, and Gleiser, and they all testified consistently that there was a known problem in the art that brackets would fall from a bridge plate if they weren't secured with a safety mechanism. Okay. Does T lack a safety mechanism? I'm sorry. Does the T prior art lack a safety mechanism? Oh, I see. No. Why would one look elsewhere based on the desire for a safety mechanism? I see. Well, that's one thing that the judge teed in on. She said that there wasn't a motivation to combine because we didn't prove that a bridge plate was necessary for a bracket, but that's really not the right question. The right question is whether there'd be a motivation to combine a bridge plate as a safety mechanism in any bracket. And the facetas all testified that they were aware of safety mechanisms, and the evidence showed that there were basically three. There was a bridge plate that's a safety mechanism. There were tabs that were a safety mechanism. Tabs are basically, they're like a half a bridge plate. They can fold outward or they can fold inward, and there was a safety bar. The VMPL-2 employed a safety bar. So the facetas had in their purview three safety mechanisms that could be used to secure a bracket to a wall plate. It doesn't matter which one they employed, but they could easily see by looking at the brackets that if you combine the ramps of the VMPL-2 with the bridge plate of the TRK-50B, you've now practiced the invention. Counsel, this is just more. I think one of the problems I have with that argument is it seems to boil down to if certain features, safety plates, screws, ramps, things like that, were generally known in the art, there's automatically a motivation to combine any of them. That's what I feel like your argument boils down to, and that seems like it would be a dramatic expansion of our law. Well, I mean, the thing to remember about that is that these are commodities, and it doesn't matter what safety measure you employ, a poseta would have all of those in their quiver, so to speak, and they could employ any one of them. And I think that is sufficient motivation to use the bridge plate in the VMPL-2. Mr. Rindach, this is Judge Chen. Could you point me to the testimony from any of the witnesses during the trial in the joint appendix where one of the witnesses, one of the experts, says there are multiple known security mechanisms and it would have been obvious, and they're all interchangeable, and so therefore it would be obvious to use any one of this fixed number, limited number of security mechanisms? Well, there is testimony by the posetas that... Can you point me to a JA site? I'd like to see the quote. A what site? The joint appendix site. I'd like to see the testimony. Sure. Okay. Let me find it now. Well, this is at APPX 8271. And the testimony is... And it's a safety answer, correct. The primary purpose of it, correct, correct. Safety and security, yes. Somewhere between those two terms. This is one who's testifying about what the bridge plate is for. But to answer your question directly, as to whether a poseta testified that, oh, we could combine any one of these elements, there isn't testimony in that regard. But what there is, Judge, is powerful evidentiary evidence. The jury had with them all three of those brackets in the jury room and they could review them and they could see them was an obvious solution. Mr. Rindach, this is Judge Chen again. Yes. You have the burden of proof to establish by clear and convincing evidence that the claims would have been obvious to a skilled artisan, right? Correct. And as part of your burden of proof in the context of a 103 challenge, don't you also need to present a reason to combine different elements together, as reflected in the claim? Yes, and there was a reason. The reason is... Well, I guess that's my concern. My concern is where in the record did you satisfy that element of your burden in a 103 challenge to put together and present what is the rationale, what is the reason to take different elements from different references and put them together? That's what I'm looking for in any testimony. Well, Judge, the obvious misanalysis isn't as rigid as I think that you're explaining. The motivation combined can be implicit within the prior art. And here you have two components. On the one hand, you have cositas who are all acknowledging that there's a problem in the art with brackets falling off the wall unless they're secure. On the other hand, the jury sees a multitude of brackets, and they all have a security mechanism. From those two elements, the jury could see that it would be obvious to use any number of those combinations to secure the bracket to the wall plate. So what the evidence, the combination of the evidence showed the jury three things. Number one, that the problem of falling brackets was well-known in the art. Number two, that there were limited common-sense solutions at a cosita's disposal to solve that problem. A cosita could use the bridge plate, it could use a tab, or it could use a safety bar. Any one of those would get the job done. And three, the 850 encompasses an obvious solution to that problem because it has a bridge plate. Armed with that evidence, the jury, any reasonable jury, any reasonable jury, could conclude that a cosita would know to combine the bridge plate of the TRK-50B with the upper and lower ramps of the BMPL-2 and have a reasonable expectation of success in achieving the claimed invention. Despite all of this evidence, the district court compounded its error by applying a heightened standard of proof to Crimson when it ruled that it did not prove that a retainer and safety screw were necessary components to a bracket. In this regard, the court applies the wrong standard because, again, the relevant question isn't whether the bridge plate and security screws are necessary components of every bracket. All that Crimson had to show was whether there was any problem known in the art with an obvious solution. Crimson wasn't required to show that a bridge plate is the only solution. It was only required to show that it was a solution. And the testimony, together with the brackets, showed, without a doubt, that the bridge plate is a solution to that problem. And based upon that evidence, the jury made two very important factual or implicit factual findings. The implicit factual findings are, one, the only difference between the H-50 and the BMPL-2 is the absence of a bridge plate in the BMPL-2, and second, that the only difference between the H-50 and the TRK-50B was the absence of the lower ramps in the TRK-50B. By themselves, the physical brackets adduced to the jury that they had in the jury room were substantial evidence supporting their verdict. And it's also interesting to note that the jury's implied factual findings on obviousness are also supported by the district court's ruling on anticipation. The district court upheld the anticipation verdict that the TRK-50B anticipated claims 1, 2, 3, 6, and 7. And what this means, and this is why it's important, it means that the jury correctly compared the claims of the H-50 to the TRK-50B based on the evidence adduced. If the jury was somehow irrational or simply didn't understand how to compare the H-50 claim language to the prior art, it would have been reflected in an unreasonable verdict on anticipation. But it wasn't. And it's clear that the jury correctly ascertained the differences between the H-50 and the TRK-50B unaided by any expert testimony. Expert testimony is not required. So based on the evidence, the case is not close. It was easy for the jury to understand. The jury's determination that Crimson proved obviousness by clearly convincing evidence was rational and correct. If I can comment a little bit about the technology, the technology here is almost a misnomer. I mean, if it's technology, it's caveman technology. If you've ever seen a picture hung on a wall by a nail and a wire, you'll understand this technology. I hear the tone and I'm out of time, so I'll rest. Okay. Thank you, Mr. Ryndeck. Mr. Diaso? May it please the Court. My name is Jim Diaso, and I'm representing peerless on appeal. Obviously, there's a number of issues that have been raised by both sides, both on the appeal and the cross-appeal. I'm going to focus my time today on obviousness and then on the items on our cross-appeal. Before we get to the issue of motivation to combine our obviousness, we think there's a preliminary issue that this Court should address and actually should reverse the finding of anticipation on and uphold the finding of obviousness on, and that is the admission of the TRK 50B bracket into evidence. We believe that the District Court abused her discretion in admitting that bracket into evidence. As we indicated in our brief, the TRK 50B bracket was the sole evidence that was before the jury with respect to anticipation, and it was one of the two brackets that were combined on the obviousness. So the entire invalidity case put forth by Crimpton depended upon the admission of the TRK 50 bracket into evidence, and if that bracket was not appropriately admitted into evidence, we believe that there is no basis for either anticipation or an obviousness. This is Judge Taranto. Do I understand right that that issue comes down to whether the District Court abused its discretion in concluding that the reliability factors of 807 are sufficiently satisfied by the quite powerful interest of Amazon in having these kinds of printouts, its listings, be accurate, and that that was enough for admissibility, the rest going to wait? Your Honor, yes, I believe that the issue comes down to whether or not, in particular, two of the four elements of 807 are fulfilled. One goes to the trustworthiness. There's an issue of whether there's equivalent circumstances of trustworthiness surrounding this, and then the second level goes to whether or not you can find non-hearsay evidence, and basically the proponent of the evidence in this case, Judge Simpson, had the burden of proving that this evidence was more probative than any non-hearsay evidence. So there are two levels to it. Trustworthiness is one level, the ability to find other evidence, or showing that that other evidence was not as trustworthy as the evidence we had. Right. I'm afraid my memory of the many, many details here might be inadequate, but am I remembering correctly or incorrectly that what you point to as the better non-hearsay evidence would be to find somebody or other in the Amazon company that might actually remember how this one among probably tens of thousands or hundreds of thousands of electronically listed items got to be so listed? No, Your Honor. First of all, I would point the court to the Burton case out of the Seventh Circuit where Judge Posner addressed just this issue. But our suggestion is consistent with what Judge Posner said, is that you have to look at what was available other than this piece of evidence before you can admit it under the hearsay rule. Right. Just to be, I was taking all of that as a given. So you said here's what would be available. Am I remembering right that what you say is here's the non-hearsay evidence in this case that would be available is some person at Amazon who might remember how this particular listing got made? No, what we would suggest, Your Honor, is the better evidence would be to go and take a corporate representative under the rules that would allow you to take a corporate representative of either Amazon or TechCraft. So you could either go to the Amazon company and ask them for a corporate representative who could talk about the circumstances for a particular website, how they're maintained, and basically show that they are qualified business records pursuant to a well-established rule or exceptions to the hearsay rule. So that would be one way. The second way would be to go to TechCraft itself, which is a manufacturer, and obtain evidence from them. Presumably they have their own evidence about when they put this particular bracket on the market, when it went for sale. And that evidence would be also something that could potentially be used to establish that this particular bracket predated the critical date. So there are different things that they could have done, but they didn't do any of them. And they didn't explain why they didn't do any of them. And they didn't show that that evidence, either from the manufacturer or from Amazon, would have been less coded than this printout from the Internet. So all of that was their burden. This is Judge Chen. What if, hypothetically, there was a printout of an article from CNN.com that said, first printed on, first published on January 2004? Do you think that would be good enough to use the printout of that article as prior art, as of that date of 2004? No, Your Honor. I think that you actually have to go through the process of establishing that there was non-hearsay evidence or evidence that fell within the scope of one of the well-established exceptions. And that's the basis for establishing clear and convincing evidence. I think one of the things that I'd ask the Court to consider here is what would be... How about WashingtonPost.com? And it said, the article said at the top, first printed or first published on January 2004. Would that be good enough? No, Your Honor. It would be our view that you would not be able to just print off a page from any website of any company without a proof that there was trustworthiness. That would be an abuse of discretion to rely on a printout from WashingtonPost.com, NewYorkTimes.com, et cetera, where that website indicated that that article was first published at a certain date. It would be an abuse of discretion, Your Honor, if there was not established the elements of 807. And again, 807, for our purposes here, we focused on two of the four elements that we think were not satisfied. The first element is there has to be proof of trustworthiness. Counsel, this is Judge Moore. Is it your view that under the Seventh Circuit, to meet the first requirement of guarantees of trustworthiness, either the statement has to be made under oath or corroborated by non-Hairsay evidence? Is it your view that Seventh Circuit law requires compliance with one of those two? I would say we don't have to go that far, Your Honor. We believe that there has to be some evidence beyond the document itself to establish trustworthiness. So precisely what the contours of that other evidence would be, I don't think you have to go so far as to say it has to be under oath or non-Hairsay evidence. But what you do is you have to have something besides just the document itself to establish trustworthiness. Let me go back to the basic issue here, which is the idea that somehow because Amazon is a well-known name and because Amazon had no motivation here, that all of a sudden we can assume that it's trustworthy. But I don't think you can do that because we have no idea about how Amazon maintained this particular site or this particular Web page. We don't even know whether Amazon itself was the person that maintained this. A lot of the companies such as Amazon, which provide marketplaces for third-party vendors, allow those third-party vendors to manage and control the particular sites on their Web site. So counsel, for example, are you suggesting that it may not even be Amazon that is listing the date first available? Amazon may actually release that to the individual and allow the individual seller to post the information like date first sold? Correct. And that is not in the record one way or the other, Your Honor. But I would suggest because it's not in the record one way or the other, the proponent of the evidence, in this case Crimson, has failed to provide their burden of proof with respect to this. So, again, they have the burden of proving invalidity by clearing convincing evidence. And we've studied case law to the court that suggests that overall burden of clearing convincing evidence applies not only to the totality of the issue of invalidity, but also to the proof that there must be some sort of showing that there's a prior argument. So they bore a substantial burden on that. And, frankly, I would say just printing something off from a Web site is not enough to do that. You've got to do more. You've got to do something that shows that that print off from a Web site has trustworthiness, and you have to do something more to prove that just by looking at the document itself. And then, secondly, you have to show why you couldn't have done it through more traditional, well-established means to actually prove the same fact. And, again, the Rule 807 that existed at that point in time required that you show that it was more probative on this particular issue than the other issues. So, Your Honor, unless the court has more questions on that, I was going to turn briefly to our issue with respect to the contract claim. With respect to the contract claim, the two points I wanted to make in the last minute or so that I have left are, number one, this was issued as decided by the district court on a motion for judgment on a pleading. So, basically, on a fair legal record where the court could make no factual findings and could not make any factual determinations. The other point I wanted to make is that we cited for this court both in Illinois law and from various jurisdictions around the country various restrictive covenants that were more broad than the covenant issue in this particular case. This is Judge Taranto. Can I just ask a question about what's at stake on these claims? Just here's my understanding, and just correct me if I'm wrong. There are two claims, civil conspiracy, tortuous interference with the Sycamore peerless contract. The possibly violated or the allegedly violated provision of the contract was the one-year post-termination do not sell something. The termination was December of 2009. The sales from Sycamore to Crimson started in July of 2010. You all knew about it, thought it was no big deal until sometime in 2011, after which, or as of which, that restrictive provision had itself lapsed because more than one year had passed since December 2009. So are we talking about five months of sales from July 2010 to December 2010? Based upon the record that we have right now, we are, Your Honor. But we will also believe that that is a significant issue that the court should be considering because the whole purpose of restrictive covenants such as this is to put the parties back, to stop people from getting a head start from using someone else's intellectual property. And with that, Your Honor, I think I'm past my time. So I will delve into this more in rebuttal if the court allows me. Okay. Thank you, counsel. I think you have some rebuttal time. Mr. Rindeck? Rindeck. Thank you, Your Honor. Rindeck. Thank you. So just with respect to the admission of the TRK-50B, Amazon.com isn't just any retailer. I mean, it's the largest retailer in the country, and they're not in the business. Is there evidence in the record of that? There is not, Judge. So you're asking me to take judicial notice of the fact that Amazon is the largest retailer in the country? I think if it's not the largest, it's in the team photo. So I should take judicial notice of some team photo? No, Your Honor. I didn't mean to be flip about it, but I think it's well known. But you're basically trying to testify right now to things you didn't put into evidence below. You're trying to offer me your personal testimony unsupported by anything in the record. I think it's common knowledge that Amazon.com is one of the largest retailers in the country. Did you argue that below? We did not argue it below, but the court... So now you're making arguments on appeal regarding this that asks me to assume or take judicial notice of evidence not in the record and arguments not made below. What evidence did you present as to the trustworthiness of the representations on the website? Well, we presented it to the court, and the court found that Amazon.com would not have any motivation to lie about the date that it published. And as for Mr. Dasau's argument... Well, would The Washington Post have any reason to lie about the date they published? It's not about lying, right? It's trustworthiness doesn't just mean lying because lying implies some intentionality. It could be carelessness, right? Or it could be perhaps Amazon allows the individual vendors to list the date first sold. Perhaps Amazon's not even in control of that data. And then you could imagine circumstances where there are wild variations in the accuracy of the data being presented if Amazon were to allow each individual seller to list and to fill that particular data field. And I think that's the problem here that I see. Well, I would draw a distinction between The Washington Post and Amazon.com. I mean, it depends on what information you're trying to rely upon in The Washington Post. Was there specific evidence on the question of who, as between Amazon and TechCraft, fills in that field about date first posted? There's no evidence of that. That's speculation from the other side. Well, it would be speculation both ways, wouldn't it? And aren't you the ones with the burden of proof here? Aren't you the ones under 807 that have to prove entitlement to this exception to the hearsay rule? It is our burden. However, that was not an objection raised by the other side. They didn't say somebody else could have filled in the Amazon.com order. That's not the argument they made at trial. I note that I'm out of time. Well, I guess I just am wondering. Don't worry about your time. I'm just not sure about this argument. The Seventh Circuit has a number of cases in which they've considered 807. And in each of those cases, but let me put it like this. In none of those cases, none, was the reference on its face the only thing that carried the day under 807. So perhaps there isn't a Seventh Circuit case that says something like this can never be enough. But I can't find any Seventh Circuit case that has held something like this is enough. Well, I note that the evidence is also admissible under 803.17 that's applicable to market reports or similar commercial publications. I don't think there's any dispute that the Amazon listing is published like a catalog and it's made with the express intent that the public rely on. And that's enough to satisfy the burden under that rule. And so pick your rule. It's admissible under either. I don't remember. Was something other than 807, such as the rule you just mentioned, argued to the district court or relied on by the district court for the admissibility? It was not, Your Honor, because the document was admitted. There was no reason to give another basis for admitting the evidence. But if you look at the rules of evidence applicable here, it's admissible under either rule. And I guess with that, I'll rest. All right, counsel. Mr. Dasso, I'll give you two minutes of rebuttal time, but please make certain that you limit yourself to issues related only to the cross appeal. Thank you, Your Honor. I'll be real brief. With respect to the admission of the piece of evidence, 803.17 was never considered or discussed by the district court. The only rule that the district court ever looked at or ever focused on was 807. So the idea that this somehow qualifies under 803.17 is not supported by the record. I also don't believe that that qualifies under 803.17, and we've indicated that in our briefs as well. Turning back to Judge Toronto's question with respect to the contract claims, Your Honor, I want to say not only is there issues here in this particular case with respect to the contract claims, but there is, as we indicated in our statement of the related cases, a separate arbitration against Sycamore directly that is dependent upon whether or not this particular claim is invalid. So the issue of the contract and the validity of the contract goes beyond this particular lawsuit and its implications elsewhere. Counsel, returning to the admissibility of this evidence, did you make the argument below that it could be TechCraft, not Amazon, that filled in that data field about when things were first available, that there is not any evidence in this record that shows that that's even a representation that is being made by Amazon itself? We did not say it could have been filled in by TechCraft. What we did say, Your Honor, was that there was no showing who filled it in, under what circumstances, or anything like that. Where did you make that argument in particular? Well, we made it in a motion to eliminate prior to the admission into evidence. This was extensively briefed on motions to eliminate. We generally objected at the time that the admission was actually made at trial. And then again, this issue was briefed in post-trial. No, no, don't worry. But I just want to be clear. You did, in fact, so if I dig in and try to find this motion to eliminate, I am going to find that you did, in fact, expressly and particularly argue that there's no showing about who filled it in. So maybe you didn't say TechCraft may have filled it in instead of Amazon, but you did make the argument, clearly you made this argument, that no showing who is filling in that data field about date first available. Your Honor, I don't want to make that specific of a representation to the court. What I recollect very clearly is we repeatedly objected to this piece of evidence because there was no showing of anything about how it was filled in or under what circumstances. From my point of view, that is a complete failure of a proof. And as a result, it would encompass what we're arguing here on appeal. But we did not make that specific argument to the district court. Well, you did not make what specific argument to the district court? The specific argument that it could have been TechCraft that filled it in or some other third party. But you did, so you did or didn't make an argument that there's no showing who filled it in? Again, I don't remember specifically saying we don't know who filled it in. I do remember saying very clearly at a number of points in time in the trial court that we had no evidence about the circumstances under which this particular website was maintained. You know, that's fine, and we'll end the argument. But I just want to say before we conclude this particular hearing today that both attorneys have made a number of arguments both in their briefs and during oral argument that weren't made below or didn't have any foundation in the record. And that's not appropriate, and it is not the way that you should be arguing appeals. It's just flat out inappropriate. So please be aware of that and try in the future to do a better job of forthrightly presenting and arguing your appeals. That's all. Thank you both counsel. That concludes this case for today.